IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| ANGEL MANUEL ORTIZ, by And through the Administrator of his Estate, SANDRA OUTLER, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:21-cv-00049-LAG |
| STATE OF GEORGIA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Derrical Bell, Kelly Cooper, Timothy Davis, Keyani Graham, and Jabreon Price submit this brief in support of their motion for summary judgment. Following the Court's ruling (Doc. 57) on motions to dismiss, Eighth Amendment failure-to-protect claims remain against these five Defendants in connection with the death of inmate Angel Manuel Ortiz. Discovery having concluded, Defendants submit that Ortiz's death, while tragic, was not the result of a constitutional violation and certainly not the result of a clearly established constitutional violation. Accordingly, Defendants are entitled to summary judgment.

## I. THE FACTS FOR SUMMARY JUDGMENT[1]

The uncontroverted evidence, Plaintiff's version of the facts,[2] and the controverted evidence viewed in the light most favorable to Plaintiff is as follows:

From February 2014 until June 2019, Angel Manuel Ortiz was an inmate incarcerated in the Georgia Department of Corrections, mostly assigned to Calhoun State Prison (CSP). (SMF, ¶ 1). During the May-June 2019 time frame, Derrical Bell, Kelly Cooper, Timothy Davis, Keyani Graham, and Jabreon Price all worked as correctional officers at CSP. (*Id.*, ¶ 2).

In late May 2019, Ortiz was out of CSP for a few days for a court appearance. (*Id.*, ¶ 3). On May 30, he returned to CSP. (*Id.*, ¶ 4).

Per protocol, upon his return to CSP, Ortiz was initially assigned to administrative segregation in Building J. (*Id.*, ¶ 5). He was assigned to share Cell J-1-111 with Inmate Frank Hardy. (*Id.*, ¶ 6).

Officer Cooper escorted Ortiz to J Building. (*Id.*, ¶ 7). Officer Bell assisted Cooper in placing Ortiz in the cell with Hardy. (*Id.*, ¶ 8). Hardy did not want to

---

[1] Defendants do not necessarily concede that all of these facts accurately describe what occurred, but they submit that these are the operative facts for purposes of summary judgment. "[T]he 'facts,' as accepted for purposes of summary judgment, may not be the actual facts of the case ...." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

[2] *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (*en banc*) ("when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*. Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided") (emphasis in original).

2

share a cell with anyone and, in front of Officers Cooper and Officer Bell, threatened harm to any inmate put in a cell with him. (*Id.*, ¶ 9).

Officer Cooper did not perceive an actual threat because "every inmate say that" when they are required to have a cellmate. (*Id.*, ¶ 10). Officer Bell spoke with Ortiz and Inmate Hardy and they seemed to be okay. (*Id.*, ¶ 11). Ortiz and Hardy continued to be cellmates through June 6, 2019. (*Id.*, ¶ 12).

Officer Davis, Officer Graham, and Officer Price worked in J Building at least some of the dates between and including May 30 and June 6. (*Id.*, ¶ 13). During those dates, these officers did not perceive any difficulties between Ortiz and Inmate Hardy. (*Id.*, ¶ 14).

Officer Davis worked the day shift on June 6, 2019. (*Id.*, ¶ 15). On that date, he did not perceive any difficulties between Ortiz and Inmate Hardy. (*Id.*, ¶ 16).

On June 6, 2019, Officers Graham and Price reported to work for the night shift at CSP. (*Id.*, ¶ 17). Officer Graham was assigned to J-1 and Officer Price was assigned to J-2. (*Id.*, ¶ 18). The plan, per their usual job performance, was that the two officers would take turns doing rounds in their building, with one remaining in the control room while the other did rounds in her assigned building. (*Id.*, ¶ 19).

Shortly after Officer Graham arrived in J-1, an orderly informed her that two inmates were fighting. (*Id.*, ¶ 20). Graham went to the door and checked on the cell of the fighting inmates through the tray flap. (*Id.*, ¶ 21). She saw Inmate Hardy repeatedly jumping on Ortiz's head. (*Id.*, ¶ 22). Graham immediately radioed for

3

assistance. (*Id.*, ¶ 23). She also instructed Hardy to stop the attack but he would not do so. (*Id.*, ¶ 24).

Officer Price heard the radio call and responded. (*Id.*, ¶ 25). She gave Hardy verbal commands to stop. (*Id.*, ¶ 26). Hardy seemed "just out of his mind." (*Id.*, ¶ 27).

Sergeant Williams and another male officer arrived; by this time, the attack had stopped. (*Id.*, ¶ 28). Inmate Hardy was removed from the cell and placed elsewhere. (*Id.*, ¶ 29). Williams called for medical assistance. (*Id.*, ¶ 30). Ortiz was taken to a hospital where he died. (*Id.*, ¶ 31).

Correctional officers are trained not to rush into cells where inmates are fighting because it may be a ploy to lure the officers into be attacked; instead, officers are taught to call for assistance and wait for backup to arrive. (*Id.*, ¶ 32).

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. The legal standard for summary judgment

The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed.R.Civ.P. 56(c)*. If the non-moving party bears the ultimate burden of proof regarding the claim at issue in the motion, that party, in response to the motion, must go beyond the pleadings and establish, through competent evidence, that there truly is a

genuine, material issue to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The non-moving party must present enough evidence to demonstrate that he can meet the substantive evidentiary standards that apply to the case, that is, that a jury might return a verdict in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Although all reasonable inferences from the evidence are resolved in favor of the non-moving party, "an inference based on speculation and conjecture is not reasonable." *Chapman v. Am. Cyanamid Corp.*, 861 F.2d 1515, 1518-19 (11th Cir. 1988). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

"Summary judgment is designed to weed out those cases . . . so clearly lacking in merit that the full trial process need not be activated to resolve them." - *Holley v. Northrop Worldwide Aircraft Services, Inc.*, 835 F.2d 1375, 1377 (11th Cir. 1988). "[I]t was intended as a device to diminish the effort, time, and costs associated with unnecessary trial." *Id.* For the reasons set forth below, a trial is not necessary in this case.

**B. Plaintiff cannot prove a constitutional violation**.

In pertinent part, § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

5

>secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). Accordingly, in any § 1983 action, the plaintiff must prove "an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). "[A] physical causal relationship, although existing at some level, may still be too remote to fairly permit the imposition of civil liability." *Dixon v. Burke County*, 303 F.3d 1271, 1275 (11th Cir. 2002).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Prison officials, thus, have a duty to protect prisoners from violence committed by other prisoners. *Id.*, at 833. However, "[p]rison officials are not guarantors of prison safety." *Averhart v. Warden*, 590 Fed. Appx. 873, 875 (11th Cir. 2014). "It is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A prison official can be held liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed], and he must also draw the inference." *Id.*, at 837.

The Eleventh Circuit has reminded parties and the courts of the "stringency of the deliberate indifferent standard," stating that "deliberate indifference is *not* a constitutionalized version of common-law negligence." *Hoffer v. Sec., Fla. Dep. of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020). "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard … is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective reckless as used in criminal law.'" *Id.* (*quoting*, respectively, *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), and *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994)).

The facts alleged in this matter are significantly similar to those asserted in *Goodman*. 718 F.3d 1325. That case concerned an elderly man suffering from dementia who "was severely beaten by his cellmate." 718 F.3d at 1329. The defendant jail officers failed to conduct required head counts and cell checks and took long breaks when they should have been completing their rounds. *Id.* at 1330. They ignored emergency calls made by another inmate who wanted to alert them to the beating he was hearing, going so far as to deactivate that inmate's emergency call button. *Id.* The Court, though "disturbed by the dereliction of duty" by the defendants, concluded that the officers were entitled to summary judgment because the evidence did not demonstrate deliberate indifference. *Id.* at 1333-34. Otherwise, "the deliberate indifference standard would be silently metamorphosed

into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not." *Id.* at 1334.

Each party must be judged individually and on the basis of what that he or she actually knew. *Burnett v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("each Government official … is only liable for his or her own misconduct"). Accordingly, this brief addresses each defendant individually or in small groups.

*Officers Bell and Cooper*: Plaintiff's claims against these officers fail for two separate reasons. First, there is no evidence that either man actually drew an inference that Inmate Hardy posed an excessive risk of harm to Mr. Ortiz. For purposes of this motion, these officers do not dispute that Hardy made a verbal threat of violence against Ortiz. (SMF, ¶ 9). But Cooper indicated that he did not take the threat seriously because inmates regularly say such things to avoid having a cellmate. (*Id.*, ¶ 10). More specially, Cooper testified that "never, in my wildest dreams, would I have thought something like that would happen." (Cooper dep. at 24). This is not deliberate indifference.

Second, even if we were to presume some level of awareness to some level of threat, Plaintiff cannot prove causation as to Officers Bell and Cooper. The conversation in which the threat was conveyed occurred on May 30, 2019, when Mr. Ortiz and Inmate Hardy were first placed in a cell together. (SMF, ¶¶ 4-9). Hardy's attack on Mr. Ortiz did not happen until June 6—one week later. (SMF, ¶¶ 17-22).

8

The temporal gap between the threat and the attack is simply too long for proximate cause to be found. *See Stallworth v. Graham*, 2015 U.S. Dist. LEXIS 105806, *12-14 (N.D. Ala. July 17, 2015). ("no reasonable jury could find" deliberate indifference when there was a two-week gap between knowledge of a potential threat from a cellmate and the incident causing harm).

*Officer Davis*:  There is no evidence connecting Davis to this matter beyond working in the dorm where Mr. Ortiz was housed on at least one day (and probably more) while Ortiz and Inmate Hardy were cellmates.  There is no testimony that Mr. Davis heard Hardy make any threat.  And Davis was not aware of any difficulties between Hardy and Ortiz.  (SMF, ¶¶ 14-16).  Plaintiff cannot prove deliberate indifference by Officer Davis.

*Officers Graham and Price*:  Graham and Price reported for work as the attack was occurring.  (SMF, ¶ 20).  Once Officer Graham was alerted by an orderly, she went to the celldoor, saw what was happening, and called for assistance.  (*Id.*, ¶¶ 20-24).  Officer Price was the first to respond.  (*Id.*, ¶ 25).  Both Graham and Price gave Inmate Hardy instructions to desist in the attack but he continued the beating.  (*Id.*, ¶¶ 24, 26).  Once further backup had arrived, the cell door was opened, Hardy was removed, and Ortiz tended to.  (*Id.*, ¶¶ 28-30).  Unfortunately, Ortiz did not survive.  (*Id.*, ¶ 31).

Officers Graham and Price did not immediately enter the cell because they were trained not to do so because of the risk it presented to officers.  (*Id.*, ¶ 32).

Moreover, it is clear that the Constitution does not require them to take that risk. An officer may be held liable for a failure to intervene in a fight between two inmates only "if [s]he was physically able and had a realistic chance to intervene and act in time to protect the inmate …." *Seals v. Marcus*, 2013 U.S. Dist. LEXIS 25299, 19 (M.D. Ga. Jan. 25, 2013) (internal quote omitted). "[H]eroic measures are not constitutionally required." *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997). "[N]o rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." *Seals*, 2013 U.S. Dist. LEXIS 25299 at 20, *quoting Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006).

Viewing the evidence in the light most favorable to Plaintiff, Officers Graham and Price may not have acted heroically, but they fulfilled any constitutional obligations.

**C. Defendants are entitled to qualified immunity**.

Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). This immunity protects from suit all but the plainly incompetent or those who knowingly violate federal law. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The relevant question to be answered is the "objective (albeit fact specific) question," of whether a

10

"reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Public officials must first show that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. *Vinyard*, 311 F.3d at 1346. Defendants acts within their discretionary authority when their "actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). Discretionary authority does not require the performance of a discretionary act; even a ministerial act is within the defendant's discretionary authority if the *Rich* test is satisfied. *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (if the defendants were acting pursuant to their job functions and within the scope of their authority, it does not matter "whether such actions be characterized as ministerial or discretionary in nature"); *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995)("discretionary authority" includes "actions that do not necessarily involve an element of choice"). Additionally, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act," but "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert International v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). For example, the issue is not whether a marshal has the authority to deliver a prisoner into unconstitutional conditions

11

but whether he has the authority to transport and deliver prisoners. *Id.* (describing *Jordan*, 38 F.3d at 1566).

The burden then shifts to the plaintiff to show that immunity is not appropriate. *Vinyard*, 311 F.3d at 1346. To carry that burden, the plaintiff must show that the constitutional right asserted was clearly established at the time the alleged violation occurred. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To make this showing, a plaintiff must identify either (1) earlier case law from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that is materially similar to the instant case, and thus, provided clear notice of the asserted constitutional right; or (2) general rules of law that apply with obvious clarity to the circumstances, clearly establishing the unlawfulness of the defendant's conduct. *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007). "'[O]bvious clarity' cases will be rare." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (*en banc*).

"Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." *Hudson v. Hall*, 231 F.3d 1289, 1297 (11th Cir. 2000). "Government officials are not required to err on the side of caution when it comes to avoiding constitutional violations." *Crosby v. Monroe*, 394 F.3d 1328, 1334 (11th Cir. 2004) (internal quotations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S.Ct. 2088, 2093) (internal quotations and citation omitted). Qualified immunity applies regardless of whether the official's alleged error was a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

As argued above, Defendants submit that no constitutional violation occurred. But even if it did, that violation was not clearly established at the time. No clearly established law required correctional officers to act on threats that they did not subjectively perceive. No caselaw that Defendants could find has held that proximate causation could be proven when there was a lengthy gap between the purported threat and the eventual violence. No officer must respond to a threat of which he is not even aware. And no binding precedent required officers to put themselves at risk to rescue an inmate from violence. Accordingly, Defendants are all entitled to qualified immunity.

### III.   CONCLUSION

For the foregoing reasons, Defendants submit that their motion for summary judgment should be granted.

Respectfully submitted this 7th day of March, 2024.

            CHRISTOPHER M. CARR  112505
            Attorney General

            LORETTA L. PINKSTON-POPE 580385
            Deputy Attorney General

            */s/ Laura L. Lones*
            LAURA L. LONES 456778
            Senior Assistant Attorney General

            Attorneys for Defendants

Please Serve:
LAURA L. LONES
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (470) 355-2765
Facsimile:  (404) 651-5304
E-mail: llones@law.ga.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed **DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 7th day of March, 2024.

*/s/ Laura L. Lones*
Georgia Bar No. 456778
Senior Assistant Attorney General

15