UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| ANGEL MANUEL ORTIZ, by and through the Administrator of his Estate, SANDRA OUTLER, et al._____PLAINTIFFS,<br>v.<br>STATE OF GEORGIA DEPARTMENT OF CORRECTIONS, et al.<br><br>_____DEFENDANTS, | CIVIL ACTION FILE NO.<br>1:21-CV-00049-LAG |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 21, Plaintiffs submit this brief in support of their motion against summary judgment in opposition of Defendants. Following the Court's ruling (Doc.57) on motions to dismiss, leaving Plaintiffs sole claim against Defendants for deliberate indifference in violation of 42 U.S.C § 1983, or the Eighth Amendment failure to protect claims remain against the five Defendants regarding the death of Angel Manuel Ortiz. Discovery concluded on January 22, 2024, and Plaintiffs will show that the above Defendants all played a role in the death of Angel Manuel Ortiz, which is clearly an established constitutional violation; therefore, Defendants are not entitled to Summary Judgment.

1

I.   **THE FACTS**

This action arises out of a failure to protect claim against Defendants regarding the death of Angel Manuel Ortiz on June 11, 2019, after an attack by his Cellmate, Frank Hardy at Calhoun State Prison in Morgan, Georgia (Doc 44 ¶¶ 13-28). On May 30, 2019, upon Plaintiffs return from a Court hearing, he was placed in Administrative Segregation housing by Officer Kelly Cooper and Officer Derrical Bell. Initially Officer Cooper attempted to place Plaintiff in cell J1-111 with Inmate Frank Hardy, when Inmate Hardy stated directly to Officer Cooper "*I will KILL him if you place him in this cell*", as such Plaintiff backed away from the cell and requested to be placed in another cell. However, despite hearing the direct threat to "*KILL*" by Inmate Hardy, Officer Cooper enlisted the help of the much larger Officer Bell and instructed Officer Bell to place Mr. Ortiz in the cell with Inmate Hardy. (Id ¶ 18). Officer Bell forced Mr. Ortiz to enter the cell with Inmate Hardy who had just threatened his life.

On the evening of June 6, 2019, Mr. Ortiz cried out for help, but no one came to assist him or stop the attack by Inmate Hardy. At the time of the attack Officer Davis was on duty, but not in the cell block to hear the noise from the attack. After the shift change occurred, an orderly reported to the control room telling the two officers coming on duty that there was a fight in cell J1-111. Officer Keyani Graham

was the first to arrive at cell J1-111 and shortly thereafter, Officer Jabreon Price arrived. Neither Officer attempted to intervene or stop the attack to protect Inmate Ortiz in any meaningful way (Id ¶¶ 36,37), nor did they even open the door with a show of force. Both just stood at the door watching as Inmate Hardy continuously kicked and jump up and down on Inmate Ortiz's head, face, chest, and motionless body. (Id ¶ 23). Subsequently, other Officers arrived and opened the door, stopping Inmate Hardy from further brutally assaulting Inmate Ortiz. Inmate Ortiz was found on the floor of the cell unresponsive. Due to the attack, Inmate Ortiz was rushed to Pheobe Medical Center, and then later that night, he was *life flighted* to Navient Hospital in Macon for trauma treatment for his severe injuries. (Id ¶¶ 24-25). Mr. Ortiz sustained injuries to his head, face, spine, abdomen, and arms. (Id ¶ 47). On June 11, 2019, Inmate Ortiz succumbed to his injuries and was pronounced dead. (Id ¶ 28; Doc. 44-3 at 2).

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A. The legal standard for summary judgment

The court's role is not to weigh the evidence when deciding a motion for summary judgement, but to determine if there is a material fact in dispute. Generally, a trial court deciding whether to grant a motion for summary judgment must view the facts in the light most

favorable to the non-moving party, drawing any reasonable inferences in that party's favor. The Supreme Court in 2007 held in *Scott v. Harris*, however, that a trial court should not adopt a party's version of the facts when the record "blatantly contradicts" as such that a reasonable jury could not believe it. The trial court, therefore, must view the facts in the light most favorable to the party opposing the motion for summary judgment only if there exists a genuine dispute regarding those facts. There is not a genuine dispute of facts if the record could not support a finding in favor of the non-moving party by a rational trier of fact. The evidence cited by the non-moving party does not have to be in admissible form, but the non-moving party must go beyond the pleadings.

FRCP 56 requires a federal court to grant a motion for summary judgment if the party shows no genuine dispute of material fact exists and the party "is entitled to judgment as a matter of law." The moving party must reference specific parts of materials from the record to show it does not demonstrate the existence of a genuine dispute or show that the other party cannot support facts allegedly at issue with admissible evidence. Cited materials may include depositions,

stipulations, affidavits or declarations, admissions, interrogatory responses, and other documents and materials. FRCP 56(c).

**B. Proof of a Constitutional Violation**

In terms of prison housing, the factors of disciplinary issues, race, gang affiliation, age and physical disabilities play a key role in keeping peace and control of the Institution. Calhoun State Prison identified L-Building as the general population for elderly (older) inmates and G-Building for younger inmates. However, the evidence will show that on May 30, 2019, none of these protocols were followed or considered upon the return of Inmate Ortiz from a Court hearing in Pickens County.

"A prison official violates the Eight Amendment's prohibition against cruel and unusual punishment if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019); Lane v. Philbin, 835 F.3d 1302 (11th Cir. 2016)*. To state a claim for deliberate indifference under the Eighth Amendment, a plaintiff "must allege facts sufficient to show: 1. A substantial risk of serious harm; 2. The defendants' deliberate indifference to that risk; and 3. Causation." *Lane, 835 F.3d at 1307; Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995)*. A deliberate

indifference claim, in the context of a failure to prevent harm contains both an objective and a subjective component. *Brown v Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)*. The first element of deliberate indifference whether there was a substantial risk of serious harm is assessed objectively and requires the plaintiff to show conditions that were extreme and posed and unreasonable risk of serious injury to his future health or safety. *Marbury, 936 F.3d at 1233; Lane, 835 F.3d at 1307*. The second element of a deliberate indifference claim which centers on the subjective component requires the plaintiff to show that prison officials (1) had actual knowledge of a risk of serious harm and (2) disregarded that risk and (3) by conduct that was more than mere negligence. *Keohane v. FL Dept of Corr. Sec'y, 952 F.3d 1257, 1273-74 (11th Cir. 2020)*. Subjective knowledge of a substantial risk requires that prison officials are both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. *Bowen, 826 F.3d at 1321*; and *Farmer v. Brennan, 511 U.S. 825, 837 (1994)*. A prison official responds to a known risk of serious harm in an objectively, unreasonable manner if he knew of ways to reduce the harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act. *Rodriguez v. Sec'y for Dept of Corr., 508 F.3d 611, 620 (11th Cir. 2007)*. A plaintiff,

6

however, is not required to "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer, 511 U.S. at 842*.

Plaintiffs present a failure to protect claim against Officers Bell, Cooper and Davis. (Doc. 44 at 1). Plaintiffs have presented evidence and facts showing that Officer Cooper admitted in his deposition (Doc. 67-6 at page 7 line 19) to hearing the threat to "*KILL*" from Inmate Hardy, as he was attempting to place Inmate Ortiz in the cell. Then, Officer Cooper enlisted the help of Officer Bell to ensure by any means necessary that Inmate Ortiz was placed in the cell with Inmate Hardy who had just threated his life. This presents a direct violation and failure to protect from harm according to the Eighth Amendment. This also establishes (1) that a "substantial risk of serious harm existed;" (2) that the prison officials "were deliberately indifferent to that risk, i.e., they both subjectively knew of the risk and disregarded it by failing to acknowledge and respond in an objectively reasonable manner; and (3) that "there was a causal connection between the defendant's conduct and the Eighth Amendment violation. *Bowen v. Warden Baldwin State Prison, 826 F.3d at 1320; Caldwell, 748 F.3d at 1099*. Both Officers Cooper and Bell ignored Inmate Ortiz's request to be placed in another cell, due to the fear for his life by

being threatened to be "*KILLED*" by Inmate Hardy. Upon arrival at a new prison location all inmate's disciplinary files are reviewed to determine their population threat and housing location. Therefore, several staff members including Officers Cooper and Bell were aware of the violent tendency of Inmate Hardy. *Bowen v. Warden, 826 F.3d at 1322*. On or about May 12, 2019, Inmate Hardy was removed from his housing unit and forcibly placed in Administrative Segregation by Officer Bell. (See Exhibit J of SMF page 7 lines 17-25; pages 8 - 9 lines 1-7) (See Exhibit 1 to Exhibit J). At the time that Bell placed Hardy in the cell, Hardy was so agitated that Bell had to physically grab Hardy and drag him into the cell. This prior incident made Officer Bell personally aware of Inmate Hardy's violent nature. (See **Exhibit J** page 7 lines 17-25; pages 8 - 9 lines 1-7) (See **Exhibit 1** to **Exhibit J**).

These actions by Inmate Hardy demonstrated a substantial risk of serious harm for Inmate Ortiz. *Bowen v Warden, 826 F.3d at 1322*. Officers Cooper, Bell and Davis were aware of the serious risk posed to Inmate Ortiz by Inmate Hardy and failed to respond in an objectively reasonable manner. *Mosley, 966 F3d at 1271-72*. Based on what the prison official knows about the prisoners, their history, the threat and the structure and administration of the prison, it is not an unreasonable response to see that the prisoners are separated and supervised while the officials investigate the threat and look into options. Therefore, Officers Cooper, Bell and Davis failed

to protect Inmate Ortiz from an immediate threat of harm and danger to his life, which is a violation of the Eighth Amendment. *Farmer v. Brennan, 511 U.S. 825, 828 (1994)*. Prison officials thus have a duty to protect prisoners from violence committed by other prisoners. (Id. At 833).

Plaintiffs have presented evidence and facts showing that Officers Graham and Price knew of the substantial risk of harm imposed by Inmate Hardy upon Inmate Ortiz and they both failed to respond in an objectively reasonable manner. All correctional officers in the State of Georgia are weapons trained, combat trained, taser trained, chemical agent trained, and the most important training is commands, presence and show of force. Officers Graham and Price used *NONE* of their training to intervene or stop the brutal assault on Inmate Ortiz, but merely stood at the cell door window watching as Inmate Hardy continuously attacked Inmate Ortiz, who was helplessly crying for help, against a much younger and stronger individual. Both Officers Graham and Price acted in an objectively unreasonable manner. *Johnson v. Body, 701 F. App'x 841, 846-847 (11th Cir. 2017)*. This in fact is a direct violation of Inmate Ortiz's Eighth Amendment Rights and shows they were deliberately indifferent to the risk and their failure to act. Thus, a prison official's failure to "respond reasonably" to a "substantial risk of serious harm" to an inmate "of which the official is subjectively aware exists" can be challenged under the

Eighth Amendment. *Caldwell v. Warden, FCI Talladega, 748 F3d. 1090, 1099 (11th Cir. 2014)*. Furthermore, Officer Graham testified in her deposition that she stood at the window and watched the entire attack by Inmate Hardy on Inmate Ortiz (Doc. 67-8, page 23 line 5-6), however, the video from the cell block showed that Officer Graham walked away leaving Officer Price at the window. Officer Graham admitted in her interview with the DOC Special Agents Howard and Stevens that "she could not stand to watch, and she walked away" and started doing a count of other inmates and closing door flaps. (See Exhibit O of SMF-video of J-1). This conduct constitutes a refusal to assist while Inmate Ortiz is being "*KILLED*" by Inmate Hardy.

According to the video from J-Building, J1-111 it took back up a substantial amount of time to arrive and assist with the intervention of the attack by Inmate Hardy; even more time passed, while Inmate Ortiz was on the cell floor waiting for appropriate medical help to arrive to care for Inmate Ortiz. These actions or lack of actions by all five (5) Officers are horrific and ultimately played a part in the death of Inmate Ortiz. Furthermore, these actions are a result of the failures by the Individuals and the Department of Corrections to hire and properly train officers to meet the standard of duty while working in the profession of corrections. This lack of actions led to the death of Inmate Ortiz.

"The Eighth Amendment's prescription against cruel and unusual punishment imposes a duty to provide reasonable protection" to prison inmates. *Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)*. A prison officer violates the Eighth Amendment when he knows that an inmate is facing a substantial threat to his safety, yet disregards that known threat by failing to respond to it in a reasonable manner, such as placing the inmate in protective custody. *Rodriguez v. Sec'y for Dept of Corrs., 508 F.3d 611, 617 (11th Cir. 2007); Farmer v. Brennan, 511 U.S. 825 829, 837, 844 (1994)*. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact." *Farmer, 511 U.S. at 842*.

### C. Qualified Immunity

Defendants argue that they are entitled to and protected by "Qualified Immunity" (Doc. 48-1 at 3-5). Regarding individual capacity claims against Defendants for failure to protect in their individual capacity (Doc. 44 ¶¶ 48-49). Defendants Cooper, Bell and Davis violated Inmate Ortiz's Eighth Amendment rights when all three failed to ensure Inmate Ortiz's safety from a clear and present threat to his life by Inmate Hardy's statement to "*KILL*". By knowing of the threat and failing to secure Inmate Ortiz's safety, Officers Cooper, Bell and Davis showed deliberate indifference to Inmate Ortiz. Inmate Hardy made a direct threat to "*KILL*" Inmate Ortiz to Officer Cooper. Further, Officer Bell, failed to protect Ortiz even

after he had to threaten to mace Hardy, to get Hardy to surrender the bottom bunk, which he taken from Inmate Ortiz. Instead, he forced the inmates to stay in the cell together, disregarding the safety of Ortiz. This constitutes a direct violation of Inmate Ortiz's Eighth Amendment right to be free of cruel and unusual punishment.

Therefore, with all officers having knowledge of clear and present danger, harm or threat to the safety of Inmate Ortiz and their failure to respond or secure and protect his life is a direct result of and violation of the Eighth Amendment and bars them from the entitlement and the privilege of "Qualified Immunity".

Defendants also argued that Officers Graham and Price are entitled to "Qualified Immunity"; however, the evidence shows that Officers Graham and Price violated Inmate Ortiz's constitutional right when they stood "at the cell door window watching" Inmate Hardy assault Inmate Ortiz and failed to intervene and protect Inmate Ortiz (Id. ¶¶ 36-37). Furthermore, Officer Graham walked away from the cell door, because she could not stand to watch the beating any longer, and completely failed to render any aid to Inmate Ortiz. "Qualified immunity protects government officers acting within their discretionary authority from liability for civil damages unless a plaintiff can show (1) that the officer violated a federal statutory or constitutional right, (2) that the unlawfulness of the officer's conduct was clearly established at the time." *Wade v. Daniels*, 36 F.4th 1318, 1323 (11th Cir. 2022);

*Williams v. Aguirre, 965 F.3d 1147, 1156 (11th Cir. 2020).* A federal statutory or constitutional "right is clearly established if" (1) the U.S. Supreme Court, the Eleventh Circuit, or the applicable State Supreme Court has decided a case with materially similar facts; (2) a broader, clearly established principle controls the facts of the situation, or (3) the conduct so obviously violates the constitution that prior case law is unnecessary. *Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017).* If issues of material facts exist, courts resolve them in favor of the *Plaintiff. Alston v. Swarbrick, 954 F.3d 1312, 1317-18 (11th Cir. 2020).*

To receive qualified immunity, a government actor must first establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Sebastian versus Ortiz, 918 space F.3d 1301, 1307 (11th circuit 2019). Lee v. Ferraro. 284 F.3d 1188, 1194 (11th Cir. 2002).* Plaintiffs don't dispute that Officers Graham and Price were acting within the scope of their discretionary authority while performing their duties as Correctional Officers on June 6, 2019 (Doc. 44 ¶¶ 9-10; Doc. 52 at 14-16), However, Plaintiffs are stating, that Officers Graham and Price clearly failed to meet the requirements for "Qualified Immunity". (1) Plaintiffs must show that Defendants Graham and Price's conduct violated Inmate Ortiz's constitutional right, and (2) that right was clearly established

at the time of the alleged violation. *Bowen, 826 F.3d at 1319*. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment, if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury. *Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019); Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016)*. To state a claim for deliberate indifference under the Eighth Amendment, a plaintiff must allege facts sufficient to show: (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation. *Lane, 835 F3d. at 1307; Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995)*. A deliberate indifference claim, in the context of a failure to prevent harm contains both an objective and a subjective component. *Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir 2004)*. The first element of deliberate indifference whether there was a substantial risk of serious harm is assessed objectively and requires the plaintiff to show conditions that were extreme and posed and unreasonable risk of serious injury to his future health or safety. *Marbury, 936 F.3d at 1233; Lane, 835 F.3d at 1307*. The second element of a deliberate indifference claim, which centers on the subjective component, requires the plaintiff to show that prison officials (1) had actual knowledge of a risk of serious harm and (2) disregarded that risk (3) by conduct that was more than merely negligence. *Keohane v. FL Dept of Corr. Sec'y, 952 F.3d 1257, 1373-74 (11th Cir.*

2020). *Brown, 387 F.3d at 1351.* Subjective knowledge of a substantial risk requires that prison officials are both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference. *Bowen, 826 F.3d at 1321; Farmer v. Brennan, 511 U.S. 825, 837 (1994).* Again, Officers Graham and Price stood at the cell door and watched as Inmate Hardy continuously brutally kicked and jumped up and down on the body of Inmate Ortiz. Neither Officer Graham nor Price put forth an effort to intervene or stop the attack by Inmate Hardy (Doc. 44 ¶¶ 23, 36-37). Both of their actions constitute a direct violation of Inmate Ortiz's Eighth Amendment; therefore, they forfeit their entitlement to "Qualified Immunity". Both officers watched at the cell door while they waited for backup to arrive, as Inmate Ortiz lay on the floor unresponsive, severely and brutally beaten and struggling to survive the injuries sustained at the hands of Inmate Hardy. Officers Graham and Price were able to intervene when Inmate Hardy attacked Inmate Ortiz, but they chose to act in an objectively unreasonable manner, which contributed to the death of Inmate Ortiz. *Johnson v. Boyd, 701 F. App'x 841, 846-847 (11th Cir. 2017).* Thus, Officers Graham and Price have violated Inmate Ortiz's Eighth Amendment rights.

Defendants cite *Goodman v. Kimbrough, 718 F.3d 1325, 132(11th Cir. 2013),* as an analogous case to this matter, but in actuality they are quite different. In the

Goodman case, there is no evidence that the guards heard an actual threat to kill Mr. Goodman as it is here in this matter with Officer Cooper and Bell clearly hearing the treat to kill Ortiz. Further, there was no evidence that the guards witnessed Goodman being killed as in this matter and not intervening like Officers Price and Graham. In addition, in Goodman there was no prior confrontation witnessed by the guards as in the matter before the court. In this case, Officer Bell witnessed Inmate Hardy take the bottom bunk from Inmate Ortiz and only relinquish it under the threat of chemical spray. **(See Exhibit O - Interview of James Turner with DOC Agents).** Furthermore, Defendants have also quoted *Seals v. Marcus, 2013 U.S. Dist. LEXIS 25299 (M.D. Ga. Jan. 25, 2013)*. However, Defendants have failed to provide the full story or legal issues related to this case. The facts in Seals show that Defendant Correctional Officers were faced with multiple inmates attempting to attack one inmate. Further, an inmate involved in that attack threatened the Correctional Officers with a shank if he tried to stop the assault on the victim inmate.

In the case at hand, Officers Graham and Price were faced with one inmate, who was stripped down to his boxer shorts only. Further, Hardy had no weapon. Officers Graham and Price watched the attack from outside the cell door and didn't put forth any effort to save Inmate Ortiz's life. There is a clear distinction between

multiple inmates with at least one of them being armed with a shank versus a single inmate who is nearly naked without any weapon.

Plaintiffs enlisted the experience and knowledge of Expert Witnesses to review the evidence and information retrieved doing our investigation and provide substantial reports of their findings. (Attached hereto as **Exhibit A** is Expert Report from Cameron K. Lindsay; and **Exhibit B** is Expert Report from Dr. Rogert A. Mitchell). In addition,

### III. CONCLUSION

Plaintiff has demonstrated through facts and law that the Defendants are not entitled to Summary Judgment and Defendants Moton for Summary Judgement should be denied.

Submitted this 8th day of April, 2024.

/s/ Robert Leanza Williams, Jr.
Robert Leanza Williams, Jr., Esq.
Robert Leanza Williams, Jr. Attorney at Law LLC
Georgia State Bar No. 777789
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| ANGEL MANUEL ORTIZ, by and through the Administrator of his Estate, SANDRA OUTLER, et al.<br><br>PLAINTIFFS,<br>v.<br>STATE OF GEORGIA DEPARTMENT OF CORRECTIONS, et al.<br><br>DEFENDANTS, | CIVIL ACTION FILE NO.<br>1:21-CV-00049-LAG |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed Plaintiffs Brief in Support of Motion for Summary Judgment with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

Submitted this 8th day of April, 2024.

/s/ Robert Leanza Williams, Jr.
Robert Leanza Williams, Jr., Esq.
Robert Leanza Williams, Jr. Attorney at Law LLC
Georgia State Bar No. 777789
Attorney for Plaintiffs