UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

ANGEL MANUEL ORTIZ, by and through )
the Administrator of his Estate, SANDRA )
OUTLER, et al. )
                                    )      CIVIL ACTION FILE NO.
                                    )      1:21-CV-00049-LAG
     PLAINTIFFS, )
v. )
STATE OF GEORGIA DEPARTMENT OF )
CORRECTIONS, et al. )
                                      )
     DEFENDANTS, )

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**

**STATEMENT OF MATERIAL FACTS**

Plaintiffs in the above styled matter, by and through their undersigned counsel, hereby submit their Objection and Responses to Defendants Statement of Undisputed Material Facts:

1. From February 2014 until June 2019, Angel Manuel Ortiz was an inmate incarcerated in the Georgia Department of Corrections, mostly assigned to Calhoun State Prison (CSP). (Ortiz movement history). **RESPONSE: Undisputed.**

2. During the May-June 2019 time frame, Derrical Bell, Kelly Cooper, Timothy Davis, Keyani Graham, and Jabreon Price all worked as correctional officers at

1

CSP. (Bell dep. at 5; Cooper dep. at 5; Davis dep. at 5, 7; Graham dep. at 5; Price

dep. at 6-7, 21). **RESPONSE: Undisputed.**

3. In late May 2019, Ortiz was out of CSP for a few days for a court appearance.

(Ortiz movement history). **RESPONSE: Undisputed.**

4. On May 30, Ortiz returned to CSP. (Ortiz movement history). **RESPONSE:**

**Undisputed.**

5. Per protocol, upon his return to CSP, Ortiz was initially assigned to

administrative segregation in Building J. (Ortiz movement history; Bell dep. at 10;

Graham dep. at 20). **RESPONSE: Undisputed.**

6. Ortiz was assigned to share Cell J-1-111 with Inmate Frank Hardy. (Ortiz

movement history). **RESPONSE: Undisputed.**

7. Officer Cooper escorted Ortiz to J Building. (Cooper dep. at 6-7). **RESPONSE:**

**Undisputed.**

8. Officer Bell assisted Officer Cooper in placing Ortiz in the cell with Inmate

Hardy. (Bell dep. at 5-6). **RESPONSE: Undisputed.**

9. Inmate Hardy did not want to share a cell with anyone and, in front of Officer Cooper and Officer Bell, threatened harm to any inmate put in a cell with him." _(Cooper dep. at 7; Kelliebrew dep. at 10). **RESPONSE: Disputed. Robert Baker stated in his deposition that Officer Bell and Officer Cooper were present when inmate Hardy threatened to "Kill" Ortiz. (Doc. 67-9 page 10 lines 16-21) (Doc. 67-9 page 21 lines 22-25) (Attached hereto as Exhibit J is the depo transcript of Robert Baker (see page 10 lines 1-7).**

10. Officer Cooper did not perceive an actual threat because "every inmate says that" _when they are required to have a cellmate. (Cooper dep. at 7-8, 243). **RESPONSE: Disputed. In Robert Baker's deposition testimony, he stated "He (Ortiz) was trying to fight not to go in there, holding the doors, the side of the door, screaming, please don't put me in there.   And the little boy was screaming, you put him in here I'm  going to kill him". (Doc. 67-9 page 10 lines 3-8) (Attached hereto as Exhibit J is the depo transcript of Robert Baker see page 10 lines 3-7). It is simply implausible that Officer Cooper witnessed the above desperate acts by Ortiz not to be placed in the cell with Hardy, combined with Hardy's repeated threat to Kill Ortiz, and perceive an actual threat.**

3

11. Officer Bell spoke with Ortiz and Inmate Hardy, and they seemed to be okay. (Cooper dep. at 15). **RESPONSE: Disputed. In Robert Baker's deposition testimony, he stated "He (Ortiz) was trying to fight not to go in there, holding the doors, the side of the door, screaming, please don't put me in there.   And the little boy was screaming, you put him in here I'm  going to kill him". (Doc. 67-9 page 10 lines 3-8) (Attached hereto as Exhibit J is the depo transcript of Robert Baker see page 10 lines 3-7). It is simply unbelievable that Officer Bell witnessed the above desperate acts by Ortiz not to be placed in the cell with Hardy, combined with Hardy's repeated threat to Kill Ortiz, and believe that they were okay.**

12. Ortiz and Inmate Hardy continued to be cellmates through June 6, 2019. (Ortiz movement history; Hardy movement history). **RESPONSE: Undisputed.**

13. Officer Davis, Officer Graham, and Officer Price worked in J Building at least some of the dates between and including May 30 and June 6. (Davis dep. at 5, 7; Graham dep. at 18-19; Price dep. at 4, 6-7). **RESPONSE: Undisputed.**

14. During those dates, Officer Davis, Officer Graham, and Office Price did not perceive any difficulties between Ortiz and Inmate Hardy. (Davis dep. at 6; Graham dep. at 19; Price dep. at 18). **RESPONSE: Undisputed.**

15. Officer Davis worked the day shift on June 6, 2019. (Davis dep. at 7-8).

**RESPONSE: Undisputed.**

16. On that date, Officer Davis did not perceive any difficulties between Ortiz and Inmate Hardy. **RESPONSE: Undisputed.**

17. On June 6, 2019, Officer Graham and Officer Price reported to work for the night shift at CSP. (Graham dep. at 5; Price dep. at 9, 15-16). **RESPONSE: Undisputed.**

18. That night Officer Graham was assigned to J-1 and Officer Price was assigned to J-2. (Graham dep. at 18-19; Price dep. at 22). **RESPONSE: Undisputed.**

19. The plan, per their usual job performance, was that the two officers would take turns doing rounds in their building, with one remaining in the control room while the other did rounds in her assigned building. (Graham dep. at 21). **RESPONSE: Undisputed.**

20. Shortly after Officer Graham arrived in J-1, an orderly informed her that two inmates were fighting. (Graham dep. at 19-20, 22). **RESPONSE: Disputed. The video of J-Building shows that Officer Graham was in the control room and**

**on duty for at least 30-minutes before the orderly informed her of the attack. (See Exhibit -O video of J-Building, showing J-1 floor.)**

21. Officer Graham went to the door and checked on the cell of the fighting inmates through the tray flap. (Graham dep. at 23). **RESPONSE: Undisputed.**

22. Officer Graham saw Inmate Hardy repeatedly jumping on Ortiz's head. (Graham dep. at 23). **RESPONSE: Undisputed.**

23. Officer Graham immediately radioed for assistance. (Graham dep. at 23). **RESPONSE: Undisputed.**

24. Officer Graham instructed Inmate Hardy to stop the attack, but he would not do so. (Graham dep. at 23-24). **RESPONSE: Disputed. Officer Graham admitted to the DOC investigators in her interview with them that she could not stand to watch the attack on Inmate Ortiz by Inmate Hardy. (See Exhibit O - Interview of Office Graham with DOC Agents). Further, Officer Price stated that Officer Graham walked away from the cell door, because she could not watch the beating of Inmate Ortiz by Inmate Hardy. (See Exhibit O - Interview of Officer Price with DOC Agents).**

25. Officer Price heard the radio call and responded. (Price dep. at 21).

**RESPONSE: Undisputed.**

26. Officer Price gave Inmate Hardy verbal commands to stop. (Price dep. at 21).

**RESPONSE: Undisputed.**

27. Inmate Hardy seemed "just out of his mind." (Price dep. at 22). **RESPONSE: Undisputed.**

28. Sergeant Williams and another male officer arrived; by this time, the attack had stopped. (Graham dep. at 18, 26; Price dep. at 26). **RESPONSE: Undisputed.**

29. Inmate Hardy was removed from the cell and placed elsewhere. (Graham dep. at 29; Price dep. at 26). **RESPONSE: Undisputed.**

30. Sergeant Williams called for medical assistance. (Graham dep. at 30).

**RESPONSE: Undisputed.**

31. Ortiz was taken to a hospital where he died. (Ortiz movement history).

**RESPONSE: Undisputed.**

32. Correctional officers are trained not to rush into cells where inmates are fighting because it may be a ploy to lure the officers into be attacked; instead,

officers are taught to call for assistance and wait for backup to arrive. (Bell dep. at 13-14; Graham dep. at 26; Price dep. at 42). **Response: Disputed. In defendant Bells deposition, he stated that if an officer is witnessing a murder, "You're going to pop that door...and (if) he doesn't (sic) comply...put the Taser on him. You got to open that door...put that Taser where it needs to be." Defendant Bell further said he was trained to not wait for backup in a situation as the attack of Hardy on Mr. Ortiz. He also stated that policy compels him to intervene and stop the attack. (Attached hereto as Exhibit J is the depo transcript of Robert Baker see page 16 lines 2-17).**

## Plaintiffs Statement of Material Facts

1. In February 2014, Inmate Ortiz was sentenced to serve time in the Georgia Department of Corrections for offenses committed in Pickens County, Georgia. (Attached hereto as **Exhibit A** is a copy of Ortiz photo upon being committed to Georgia Department of Corrections and a photo of him upon release.)

2. On January 24, 2019, Inmate Hardy arrived at Calhoun State Prison due to a Court hearing and disciplinary issues at Telfair State Prison. (Doc. 67-4.)

3. Between January 24, 2019, and May 12, 2019, Inmate Hardy had four (4) disciplinary infractions, including attacking a Correctional Officer. (Doc. 67-4).

4. From January 24, 2019, to May 12, 2019, Inmate Hardy had been moved from different housing units ten (10) times. (Doc. 67-4.)

5. On May 12, 2019, Inmate Hardy was placed in Segregation to due to a refusal to accept his housing placement. (Doc. 67-4.) (**Exhibit D** investigative email dated June 6, 2019.) (Doc. 67-9 page 9 lines 13-15.)

6. On May 12, 2019, Inmate Hardy was removed from his housing unit and forcibly placed in Administrative Segregation by Officer Bell. (See **Exhibit J** page 7 lines 17-25; page 8 lines 1-25; page 9 lines 1-7) (See **Exhibit 1** to **Exhibit J**).

7. On May 30, 2019, Inmate Ortiz returned to Calhoun State Prison from a Court hearing in Pickens County, Georgia. (Doc. 67-3).

8. On May 30, 2019, Inmate Ortiz was escorted to J-Building and cell J1-111 by Officer Cooper. (Doc. 67-6 pages 6-7).

9.  On May 30, 2019, Officer Cooper heard the direct threat from Inmate Hardy to "KILL" Inmate Ortiz if you place him in this cell. (Doc. 67-6 page 19-22.) (Doc. 67-9 page 10 lines 16-21.)

10. On May 30, 2019, Officer Bell was enlisted by Officer Cooper to force Inmate Ortiz in the cell with Inmate Hardy and Officer Bell heard the threat by Inmate Hardy to "KILL" Inmate Ortiz. (Doc. 67-9 page 10 lines 16-21) (Doc. 67-9 page 21 lines 22-25) (Attached hereto as **Exhibit J** is the depo transcript of Robert Baker see page 10 lines 1-7).

11. Between May30, 2019 and June 6, 2019, Officer Bell witnessed Inmate Hardy take the bottom bunk from Inmate Ortiz and only relinquish it under the threat of chemical spray. **(See Exhibit O - Interview of James Turner with DOC Agents).**

12. On June 6, 2019, Inmate Hardy viciously brutally attacked Inmate Ortiz by jumping and stomping on his head, chest, arm and sustaining serve life threating injuries. (Attached hereto as **Exhibit K** is a copy of the Incident Report)

13. On June 6, 2019, both Officers Graham and Price admitted that Inmate Hardy was on a drug or had taken something to Special Agent Howard and Stevens. (Attached hereto is **Exhibit E** email chain regarding investigation

of Ortiz assault.) (Doc. 667-10-page14 line 15) (Doc. 67-5 pages 19-23)
(Doc. 67-7 page 10 lines 16-22.) (Doc. 67-9 page 7 lines 6-10; page 17 lines
15-25). (Exhibit J page 20 lines 7-20)

14. On June 6, 2019, the video from J-Building level 1 showed no 30 minutes
cell checks being made. (Attached hereto as **Exhibit O** - USB video from
Calhoun State Prison)

15. On June 6, 2019, video from Calhoun State Prison confirmed that it took
approximately 15 minutes for other Officers to open the cell door and stop
the attack on Mr. Ortiz. (See **Exhibit O** - video from Calhoun State Prison)

16. On June 6, 2019, video showed Inmate Ortiz laying on the cell floor
unresponsive for several minutes before medical arrived to assist him. (See
**Exhibit O** - video from Calhoun State Prison J-Building cell J1-111)

17. On June 6, 2019, Inmate Ortiz was removed from Calhoun State Prison and
transported to Pheobe Punty Medical Center for treatment and subsequently
transferred to Navicent Hospital for trauma treatment. (Doc. 67-3).

18. On June 6, 2019, at 10:55 pm DOC Special Agents Howard and Stevens
interviewed Officer Graham regarding the attack on Inmate Ortiz by Inmate
Hardy and Officer Graham watching Inmate Hardy holding on to the bed

railing and jumping up and down on Inmate Ortiz face with his feet. (See **Exhibit O** - Interview of Officer Graham with DOC Agents).

19. On June 6, 2019, Officer Graham testified that she watched Inmate Hardy jump up and down on Inmate Ortiz at least 4-5 times, before she stopped watching the attack. (See **Exhibit O** - Interview of Officer Graham with DOC Agents).

20. On June 6, 2019, Officer Graham admitted to the DOC investigators that she could not stand to watch the attack on Inmate Ortiz by Inmate Hardy. (See **Exhibit O** - Interview of Office Graham with DOC Agents).

21. On June 6, 2019, at 11:19 pm Special Agents Howard and Stevens interviewed Officer Price regarding the attack on Inmate Ortiz and watching Inmate Hardy jumping, stomping and stepping on Inmate Ortiz like paper and kicking him in the face. (See **Exhibit O** - Interview of Officer Price with DOC Agents).

22. On June 6, 2019, Office Price testified to the DOC Special Agents that the fight had to be going on for a while before she arrived at the cell door. (See **Exhibit O** - Interview of Officer Price with DOC Agents).

23. On June 6, 2019, Officer Price testified to the DOC Special Agents that Inmate Hardy kicked Inmate Ortiz in the face approximately 10 times that

she witnessed. (See **Exhibit O** - Interview of Officer Price with DOC Agents).

24. On June 6, 2019, Officer Price testified that Officer Graham walked away from the cell door, because she could not watch the beating of Inmate Ortiz by Inmate Hardy. (See **Exhibit O** - Interview of Officer Price with DOC Agents).

25. On June 6, 2019, Inmate Hardy attacked Inmate Ortiz while in cell J1-111. There were no 30-minute cell checks accruing in J-Building doing the time of the attack on Mr. Ortiz. (See **Exhibit -O** video of J-Building, showing J-1 floor.) (Doc. 67-7-page 15 line 9, 20,22, 25.) (Doc. 67-6-page 31 line 1, 4).

26. On June 7, 2019, DOC Special Agents Howard and Stevens interviewed Inmate James Turner, regarding the attack of Inmate Ortiz by Inmate Hardy. (See **Exhibit O** - Interview of Inmate James Turner).

27. On June 7, 2019, Inmate James Turner testified that on May 30, 2019, Officer Bell threatened to spray Inmate Hardy with mace if he didn't surrender the bottom bunk to Inmate Ortiz. (See **Exhibit O** - Interview with Inmate James Turner).

28. On June 7, 2019, Inmate James Turner testified that Inmate Hardy was smoking strips (drugs) and wigged out on the date of the incident between Inmate Hardy and Ortiz. (See **Exhibit O** - Interview of James Turner).

29. On June 7, 2019, Inmate James Turner testified that Calhoun State Prison was full of drugs. (See **Exhibit O** - Interview of James Turner).

30. On June 12, 2019, Mr. Ortiz was pronounced deceased from the injuries he sustained from the attack by Inmate Hardy. (Attached hereto as **Exhibit B** is a copy of Ortiz Death Certificate.)

31. On June 7, 2019, Warden Smith requested to have Inmate Hardy transferred to another prison due to his disciplinary issues and security threat. (**Exhibit F** Special Management Unit Request form).

32. On June 19, 2019, Warden Smith requested a list of all inmates that had died on his watch while the Warden at Calhoun State Prison. (Attached hereto as **Exhibit G** is an email from Warden Smith to Secretary.)

33. On August 19, 2019, an Ante Litem Notice was sent directly to Calhoun State Prison – Warden (Tarmarshe Smith) and The Commissioner of the State of Georgia Department of Corrections (Timothy Ward) for the Preservation of Evidence. (Attached hereto as **Exhibit C**).

34. On June 6, 2019, Officer Keyani Graham failed to render aid/help to Inmate Ortiz while being attacked by Inmate Hardy; Officer Graham stood at the cell door and watched the attack through the window. (Doc. 67-8 lines 12-23).

35. On June 6, 2019, Office Jabreon Price failed to render aid/help to Inmate Ortiz while being attacked by Inmate Hardy; Officer Price stood at the cell door and watched the attack through the window. (Doc. 67-10 page 22 lines 12-21; page 23 lines 7-24.)

36. On September 20, 2023, Plaintiff's Counsel propounded discovery upon Defense Counsel, which should have been due on or by October 21, 2023. Defense failed to provide discovery responses until December 7, 2023. (Attached hereto as **Exhibit H** are email exchanges regarding discovery responses between counsel.) Pursuant to Rule 36 Admissions are deemed admitted, if not responded to timely, in accordance with the Civil Practice Act; and Defendants lose their right to object in regard to discovery responses for Cooper and Bell.

37. On January 24, 2024, Defense and Plaintiff counsel email exchange resulted in notification for evidence being destroyed in spite of the Georgia Department of Corrections being aware of the Ante Litem Notice and

Request for Preservation of All Evidence. (Attached hereto as **Exhibit I** are emails between counsel regarding missing discovery and evidence; and see **Exhibit B.**)

38. Pursuant to SOP and Policy Number 209.03 of the State of Georgia Department of Corrections, no Officer working in J-Building were following the policy document listing daily activities. Defendants failed to provide the logbook section and door sheet for June 6, 2019. (Attached hereto as **Exhibit L** is SOP 209.3 page 7.)

39. Pursuant to SOP and Policy Number 209.06 of the State of Georgia Department of Corrections, Officers in J-Building on June 6, 2019, failed to follow policies and procedures by not making 30-minute cell checks and not documenting the cell checks. (Attached hereto as **Exhibit M** is a copy of SOP 209.6 page 13.)

40. As of September 14, 2021, State of Georgia Department of Corrections were notified of an investigation by the U.S. Department of Justice regarding inmate deaths and violence within the prison system. (Expert Report **Exhibit A** to Brief.)

41. On September 14, 2021, Kristen Clarke, the leader of the Department of Justice Civil Right Division reported to CNN there is "significant

justification" to open an investigation in to how the Georgia Department of Corrections violates the Constitutional Rights of prisoners. (Expert Report **Exhibit A** to Brief.)

42. In March 2022 the Department of Justice filed a petition in federal court accusing Georgia Department of Corrections of denying investigators access to facilities and refusing to release figures regarding the number of inmates killed in the State's prisons. (Expert Report **Exhibit A** to Brief.)

43. Georgia Department of Corrections have a moral, ethical, professional, and constitutional responsibility to ensure the custody, control and care of all inmates in their custody. (Expert Report **Exhibit A** to Brief.)

44. All threats made by inmates *must be* taken as seriously as possible, but this threat was not taken seriously by Defendants Cooper and Bell. In fact, it was ignored, and this led to the death of Angel Ortiz. (Expert Report **Exhibit A** to Brief.)

45. Defendants abjectly failed to provide Angel Ortiz with a safe environment and reasonably protect him from harm. Conversely, their actions and lack of actions directly led to the violent assault against Angel Ortiz. (Expert Report **Exhibit A** to Brief.)

46. Based on the disciplinary history of Inmate Hardy, he should never have been housed with any other inmate, but especially not Angel Ortiz, who had been classified by the DOC as minimum supervision level and was scheduled for release in mere days (June 19, 2019). Ortiz had a spotless record of institutional adjustment and was 60 years old and walked with a cane. (Expert Report **Exhibit A** to Brief.)

47. Calhoun State Prison appears to be under supervised, poorly lead, and fails to follow the minimum standards within the profession of corrections, such as implementing and adhering to a custody classification program and adequately supervising inmates and staff. Moreover, Defendants failed to adhere to the agency's own policies and procedures, all of which culminated in in the catastrophic event of the deadly assault on Angel Ortiz. (Expert Report **Exhibit A** to Brief.)

48. Angel Ortiz suffered injuries to his face, head, chest and arm, sustaining serious and life-threatening injuries from a brutal attack by his cellmate. (Expert Report **Exhibit B** to Brief.)

49. Angel Ortiz was transported to Pheobe Putney Hospital by ambulance and received 16-18 units of blood and fresh frozen plasma for the treatment of hypotension and tachycardia. Ortiz also received treatment with bilateral

chest tubes placement for bilateral hemopneumothorax. Ortiz suffered cardiac arrest requiring CPR that resulted in rapid return of spontaneous circulation. (Expert Report **Exhibit B** to Brief.)

50. Subsequently Angel Ortiz was transferred to Navicent Health for trauma care. Upon arrival Ortiz again suffered cardiac arrest that required additional resuscitation. He was intubated due to acute respiratory failure and admitted to the surgical intensive care unit. (Expert Report **Exhibit B** to Brief.)

51. Angel Ortiz suffered from significant swelling around the scalp, evidence of bruising, lacerations, bleeding from the nose, and mouth. A CT scan of the head showed subarachnoid, subdural and intraventricular hemorrhages. (Expert Report **Exhibit B** to Brief.)

52. Ortiz also suffered from a diffuse cerebral edema, primarily in the posterior fossa and evidence of uncal herniation. CT scan revealed significant change including a large acute left subdural hematoma with left to right shift and trapped ventricle. (Expert Report **Exhibit B** to Brief.)

53. On June 7, 2019, Ortiz was taken to the operation room for left frontoparietal temporal craniotomy and evacuation of acute subdural

hematoma with duraplasty with an estimated blood loss of during the procedure of 200 milliliters. (Expert Report **Exhibit B** to Brief.)

54. The hospital course included another CT scan of the head that revealed multiple cerebral infarctions with worsening neurological examination. His prognosis was poor. (Expert Report **Exhibit B** to Brief.)

55. On June 10, 2019, Ortiz lost the function of all brainstem reflexes and succumb to his injuries at 4:49 pm.  (Expert Report **Exhibit B** to Brief.)

56. With very severe and profound trauma comes very severe and profound suffering. Ortiz AIS severity was level 4 and ISS severity is 38. Which indicates critical/severe trauma to head, neck, chest and external skin. (Expert Report **Exhibit B** to Brief.)

57. From May 30, 2019, to June 6, 2019, Calhoun State Prison was covered by several insurance policies to cover their negligence and egregious actions. (Attached hereto as **Exhibit N** are the Declaration Pages of DOC Calhoun State Prison Insurance Policies.)

 Submitted this 8th day of April, 2024.

/s/ Robert Leanza Williams, Jr.
Robert Leanza Williams, Jr., Esq.
Robert Leanza Williams, Jr. Attorney at Law LLC
Georgia State Bar No. 777789
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| ANGEL MANUEL ORTIZ, by and through the Administrator of his Estate, SANDRA OUTLER, et al. | ) ) ) ) ) | |
| | | CIVIL ACTION FILE NO. |
| | | 1:21-CV-00049-LAG |
| PLAINTIFFS, | ) | |
| v. | ) | |
| STATE OF GEORGIA DEPARTMENT OF CORRECTIONS, et al. | ) ) | |
| | ) | |
| DEFENDANTS, | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed Statement of Material

Facts and Exhibits with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to all counsel of record.


Submitted this 8th day of April, 2024.

/s/ Robert Leanza Williams, Jr.
Robert Leanza Williams, Jr., Esq.
Robert Leanza Williams, Jr. Attorney at Law LLC
Georgia State Bar No. 777789
Attorney for Plaintiffs